W. J. HEALY, Appellant, v. B. R. PATTERSON.

**Master and Servant:** NEGLIGENCE OF SERVANT: EVIDENCE. In an action against a master for an injury resulting from the negligence of a servant, the evidence is considered and held to show that the servant had no authority to operate the machinery, the negligent use of which resulted in the injury.

**Negligence of Servant:** LIABILITY OF MASTER. A master is not responsible for the negligent acts of an employe done outside the scope of his employment.

**Pleadings:** EVIDENCE. Evidence tending to show improper con-
struction of machinery is irrelevant under an allegation of
negligence in handling the same.

**Same.** Under an allegation charging simply negligence in operat-
ing a machine, the introduction of a model is not prejudicial.

**Pleadings.** A charge of negligence in the operation of machinery
does. not raise an issue of improper construction or want of
repair.

**Negligence of Servant.** A servant in charge of machinery has the
right to assume that no stranger will attempt to work the same
in his absence.

*Appeal from Polk District Court.*—HON. W. H. MCHENRY,
Judge.

SATURDAY, FEBRUARY 13, 1904.

ACTION at law to recover damages for personal injuries.
Trial to a jury. At the conclusion of plaintiff's evidence, the
court, on defendant's motion, directed the jury to return a
verdict for him, which was accordingly done. Plaintiff ap-
peals.—*Affirmed.*

*G. M. Tripp* and *C. C. Cole* for appellant.

*Dowell & Parish* for appellee.

DEEMER, C. J.—Defendant is a grain dealer, engaged
in business at the town of Mitchellville. In connection with
that business, he runs and conducts an elevator. This eleva-
tor had an elevated platform, supplied with a trapdoor to let
the grain pass through, and also with an elevator dump,
which was so arranged that, after a team had passed over it,
by the use of a lever the operator could drop the hind wheels
of the wagon, and at the same time elevate the front ones
so that the grain would pass out of the hind end of the wagon
box, down through the trapdoor to a bin, from which place
it was elevated into the main structure by machinery. The
allegations of negligence are as follows: "On or about the

6th day of July, A. D. 1900, the defendant was taking in
grain, and having his patrons drive upon the said platform
and unload said grain in the manner as hereinbefore de-
scribed.    That the work of unloading and dumping said
grain was under the control and management of the defend-
ant herein, and the said labor of dumping to unload was per-
formed by one Daniel Ault and Homer Davis, who were at
the time mentioned in the employ of defendant.    That upon
the said 6th day of July, A. D. 1900, this plaintiff hauled a
load of corn to said defendant for one P. J. Quinliven, who
had sold said corn to defendant.    That one Sidney Daly, who
was also hauling corn for the defendant, had just passed
over said elevator platform, and his load of corn had been
dumped out, as before described, and ·had driven off said
platform, when one of the aforementioned employes of the
defendant, to wit, Homer Davis, closed down the trapdoor
where said corn had dropped through, as hereinbefore de-
scribed, and directed plaintiff to drive upon said platform;
and this plaintiff drove upon said platform, as directed by
said employe, and, just as the front wheels of his wagon got
upon said dump, the dump under the right front wheel of
said wagon gave way by reason of the negligent way by which
it was kept and handled—the said employe of the defendant
having carelessly and negligently failed and neglected to
properly fasten and secure said dump, and negligently allow-
ing plaintiff to drive upon the same when it was not properly
secured and fastened—and by reason of said negligence the
front wheel of plaintiff's wagon dropped down, which threw
plaintiff off of said wagon, and, falling in front of said
wagon, the same ran over his right arm, while loaded with
about fifty bushels of shelled corn, and bruised and mangled
the muscles and nerves of plaintiff's said right arm, and
caused muscular atrophy, whereby plaintiff's right arm has
become permanently disabled."    The defendant admits most
of the facts pleaded by plaintiff, but denies that Davis, the
employe, was employed for the purpose of handling or operat-
ing the dump, and avers that he was employed for work of

an entirely different character; and, by the terms of his employment, was expressly excluded from any work in or about the dump. He also alleges that plaintiff was guilty of contributory negligence. There is no charge in the petition that the dump was improperly constructed, or that it was out of repair. The sole allegation of negligence is the carelessness of an employe in fastening and securing the dump, and in allowing plaintiff to drive upon it while insecurely fastened, so that we are relieved of the necessity of considering the construction of the dump, or of defendant's failure to provide the necessary number of servants and agents to properly operate it. The sole issue in the case is defendant's liability for the acts and conduct of his servant Davis in failing to properly fasten and·secure the dump, and in allowing plaintiff to drive upon it before it was. properly fastened and secured.

The facts are not seriously in dispute. From the record we extract the following, which is all the evidence material to the issues presented: "Mr. Patterson weighed my load

1. NEGLIGENCE of servant: evidence. of .corn. When he weighed the corn, he said, 'All right.' Sidney Daly was ahead of me at the time my load was weighed. He was in the elevator approach, about 268 feet from the scales. Daly was hauling corn for Quinliven. Mr. Davis dumped Daly's load of corn. When Daly drove on the scales, Mr. Davis pulled the trapdoor and unloaded his corn. I was behind Daly at the approach to the elevator, and, when he had his load unloaded, he drove off, and I drove on. There was a thunderstorm coming up, and we were in a hurry to get in before the corn got wet. When I drove on, the front wheel of my wagon went down, and threw me down on the floor. When Daly drove off, Davis took the broom and swept in the corn; and, when he had shut down the trapdoor, he waved his hand to me, and said, 'All right.' I did not see Mr. Ault about the elevator dump at the time I unloaded. Had hauled grain to Patterson's elevator a couple of times before. I don't mean I delivered corn three different years, but on three dif-

ferent occasions. Had delivered corn before this load in 1900. I was personally acquainted with Mr. Patterson and Mr. Ault. I knew a dump was used there for unloading wagons in the elevator. I might have known it a little over a year. I am not certain. I was not personally acquainted with Mr. Davis, but had seen him around town before. I think he was of age." This was plaintiff's own testimony. One of his witnesses testified: "I had a conversation with Mr. Patterson in regard to his elevator dump since that time—about its condition at that time. He said that the elevator was perfect when operated by the regular man that he had employed for that purpose. I think he said that, if the elevator wasn't properly adjusted, it wouldn't catch sometimes. This conversation was some time after the accident. I don't remember. It might have been two or three weeks. He said that he considered the dump perfectly safe while Mr. Ault was operating it; that he had used it for years, and had never had an accident; and he said that, if Mr. Ault had been operating it at the time, the accident would not have happened. He said that, if the lever was not properly handled, that it would sometimes miss catching a little; that it had to be locked to." Another said: "Mr. Ault was dumping grain there at the time. I think he was the only one present, except the parties coming in with the grain. His name is Daniel Ault. I had a conversation with him at the time in regard to the dumping of that platform. He said in that conversation that he or Mr. Patterson always attended the dump, and that he was always very careful in handling the dump, but I don't remember any other words in connection with it. I don't know what brought up that—whether it was something that I said. I had a conversation with him after this injury occurred. He said in that conversation that he had this Homer Davis working there—assist him in the work; that they were loading cars, taking in grain, and that one car had been switched away from the elevator, and the section foreman had told them the car was leaking; that he and Homer Davis went to where the car

was, and he sent Davis to the elevator or engine room, where they kept the tools, to get tools to repair the car, and that while Davis was there these loads of corn came in, and that, instead of calling him to come and dump the loads, that Davis went to dump the loads himself, and he dumped the first one, and, when the second one went on, the wheel dropped down, and the man fell out on the platform; that the team started to run, and Davis caught the team. Q. Did he say anything about the working of the dump at that time, and, if so, what? A. He said in that conversation that Davis had no right to use the dump; that he was not hired for that purpose, and that was his work—Mr. Ault's work—to use the dump; and that, if he had been there, the accident would not have happened. That is as near as I can remember the conversation. It has been a long time ago."

This is all the relevant evidence in the case, and we have to determine, first, whether it establishes the facts stated in the petition; and , second, whether these facts constitute a cause of action. If it shows the employment of Davis as a servant of defendant, it also establishes that he was not employed to use or in any manner to handle the dump, and that he had no right to use it; that at the time in question he volunteered to dump the loads which had passed onto the elevator ahead of plaintiff, and that neither Ault, who was employed to look after the dump, nor the defendant, knew that Davis had undertaken to manage the dump; and that whatever he did in connection with this appliance was wholly without authority from any one. Doubtless much of this evidence was incompetent, had it been objected to by defendant; but, as no objection was made, and as plaintiff is relying upon it as making out his case, we must accept it as the true version of the affair, and treat it accordingly. There is absolutely no evidence that Ault sent Davis to manage the dump, or that defendant had any knowledge of the fact that he was operating it. He was not employed for that purpose, and whatever he did was as a mere volunteer, and contrary to the terms of his employment.

Appellant's counsel say that it was defendant's duty to provide agents and servants who could and would properly protect the interests of his patrons.   This is, no doubt, true,

2. NEGLIGENCE of servant: liability of master.

as an abstract proposition of law; but there is no allegation in the petition, and no evidence which would justify a finding, that he did not provide servants who could and would properly protect his customers. Ault was employed for that purpose, and knew how to operate the dump with safety.   He was not required to be present at all times.   Plaintiff knew that Ault had operated the dump theretofore, and he had never seen Davis about the place prior to the time he received the injuries.   Defendant is not to be held responsible for the acts of strangers, nor for the unauthorized and forbidden conduct of his employes, unless after knowledge thereof he was himself guilty of some misconduct.   Of course, where one invites another to deal with him and provides a place for the delivery of articles sold, he is bound to use reasonable care to make and keep the place in a reasonably safe condition for the uses intended. There is no charge in the petition that the dump was in an unsafe condition.   Plaintiff's theory is that defendant's servant Davis was negligent in not properly handling the appliance.   This may be conceded, and yet, if this servant was a mere interloper, and had no authority to operate the dump, and if he undertook to do so in violation of his instructions, the defendant is not responsible for his act.   That a master is not responsible for the acts of his servant done outside of the course of his employment is fundamental. *Marion v. C. R. I. & P. R. R.,* 59 Iowa, 428; *Dolan v. Hubinger,* 109 Iowa, 408; *Kincade v. C. M. & St. P. R. R.,* 107 Iowa, 682; *Porter v. C., R. I. & P. R. R.,* 41 Iowa, 358; *Golden v. Newbrand,* 52 Iowa, 59; *Yates v. Squires,* 19 Iowa, 26. Appellant's counsel say that Davis' act was within the scope of his employment.   But the record does not bear them out in this claim.   We have set out all the testimony on this proposition, and think there is an utter failure to prove that Davis had any authority to operate or to handle the dump.

Plaintiff offered evidence tending to show the improper construction of the dump, which was excluded as irrelevant. 3. EVIDENCE. The ruling was manifestly correct. Moreover, the questions propounded called for the opinion of a witness, a non-expert, who had no particular knowledge of the subject.

Again, a model was introduced in evidence, without objection, which showed the construction of the 4. SAME. dump, and no prejudice resulted from the ruling, even if it was erroneous.

Plaintiff further contends that the petition charges negligence in the keeping and handling of the dump, and that the case should have gone to the jury on the question of improper construction and want of care in the 5. PLEADINGS. handling of the same. Looking again to the allegations of the petition, it will be observed that there is no charge that the dump was improperly constructed or was out of repair. The sole charge is that the dump gave way by reason of the negligent manner in which it was kept and handled. This does not involve improper construction or want of repair. The thought of the pleader evidently was that Davis, who, it is charged, was defendant's servant, improperly cared for and negligently handled the dump. Conceding that the petition also charges negligence on the part of defendant and Ault in not looking after the dump, yet this does not help the plaintiff, for the evidence clearly shows that defendant furnished a competent man, in the person of Ault, to care for and handle the device, and that he had no knowledge whatever that Ault was not performing his duty. Moreover, there was no evidence from which a jury could rightly infer that Ault himself was negligent. He (Ault) did not send Davis to look after the device, and, if Davis had not officiously and without authority undertaken on his own responsibility to do the work for which Ault was employed, this unfortunate accident would not have happened. It was not due to any actionable negligence on the part of either Ault or of the defendant. There is no evidence to show that Ault knew of the

presence of defendant's customers upon the dump. And if there had been, he had the right to assume that no stranger would attempt to work the dump in his absence. The negligent act of Davis intervened between Ault's failure to work the dump and the happening of the accident, and for this negligent act neither Ault nor the defendant was in any manner responsible.

**6. NEGLIGENCE of servant.**

The trial court was right in directing a verdict for the defendant, and the judgment is AFFIRMED.