## Harry V. Jefferis v. Chicago & Northwestern Railway Company, Appellant.

**Flood waters:** INJURY TO GROWING CROPS: MEASURE OF DAMAGES. The measure of damages for injury to growing crops by reason of flooding of the same, in an action by the owner of the land, is the difference between the value of the land with the crops growing thereon prior to the flood, and its value after the flood; but the measure of damages for such injury to crops grown on the land of another is the difference in the reasonable market value of the standing and growing crops, immediately before and immediately after the injury, taking into account the right to mature and harvest the same.

**Same:** EVIDENCE. In this action the plaintiff is suing for damage to crops grown on his own land and those grown by him on adjoining land. He made no claim of damage to his own land other than to the growing crops thereon, and there was no evidence of any formal lease of the land of the other or of any rental which plaintiff agreed to pay therefor. *Held,* that plaintiff was properly permitted to testify as to the difference in value of the crop raised on such land as it stood before the flood and its value afterwards, taking into account the right to mature and harvest the same so far as not destroyed by the flood, as the measure of his damage.

**Same.** Where plaintiff is entitled to some damages to growing crops because of flooding the land, it is proper in estimating such damages to determine what the value of the crops would have been in the course of ordinary events if matured; and where the evidence tended to show that the season was favorable to such crops, it was permissible to prove the usual yield and the usual market value in that locality, even though other contingencies might have affected the value of the crops.

**Same:** FLOOD WATERS: NEGLIGENCE: EVIDENCE. Where the evidence, as in this case, was sufficient to show that a dam composed of driftwood was formed, and that the damage to plaintiff's crops resulted from the negligent breaking up of the dam by the defendant and a deposit of the flood wood farther down the stream, causing the water to break over the embankment of the stream and flood plaintiff's land, there was sufficient evidence to entitle plaintiff

to recover for injury to his crops; and a refusal of evidence relating to previous and subsequent breaks in the embankment of the stream was not erroneous.

**Same.** The evidence in this action on the question of whether defendant negligently strung wires across a bridge, at which place flood wood formed a dam, and permitted the same to remain longer than was proper, thus contributing to the formation of the dam, was sufficient to take that question to the jury.

**Same.** The evidence in this action is also held sufficient to warrant a submission to the jury of the question whether defendant's employees were negligent in breaking up the original dam, causing the flood wood to pass farther down the stream, there forming a dam and flooding plaintiff's crops.

**Same:** INSTRUCTION. The evidence in this case tending to show that the original dam in question was caused or contributed to by wires strung on defendant's fence, that the dam was in part on defendant's land and that it caused the water to flow along its right of way and imperil its track, was sufficient to authorize a submission of the question of defendant's duty to remove the wires.

**Same:** NEGLIGENT ACTS OF AGENT: LIABILITY OF PRINCIPAL. Where, as in this case, the evidence is sufficient to warrant the conclusion that defendant's employees were acting in its interest in removing the dam or obstruction to the waterway in question, their acts in so doing, if performed in good faith, are binding upon the defendant.

**Same:** NEGLIGENCE: PROXIMATE CAUSE: EVIDENCE. The evidence in this action is held sufficient to show that there was reason to believe, on the part of defendant's employees, that the flood wood flowing down the stream after the dam in question was broken up would lodge further down the stream and obstruct the flow of water, and cause the bank of the stream to break with resulting injury to plaintiff's crops; and that on the whole case there is sufficient evidence of negligence and that the breaking of the embankment was the proximate result thereof to take the case to the jury.

*Appeal from Pottawatamie District Court.*—HON. A. B. THORNELL, Judge.

FRIDAY, JANUARY 14, 1910.

REHEARING DENIED, MONDAY, APRIL 11, 1910.

ACTION to recover damages to plaintiff's crops by water thrown upon plaintiff's land as the result of negligence on the part of defendant's employees in causing an obstruction of a stream. There was a verdict for plaintiff, and defendant appeals.—*Affirmed.*

*Harl & Tinley, James C. Davis, George E. Hise,* and *A. A. McLaughlin,* for appellant.

*John P. Organ,* for appellee.

MCCLAIN, J.—During the year of 1906 plaintiff was farming about one hundred acres of land belonging in part to himself and in part to his wife, lying about half a mile west of the right of way of the defendant road in Pottawattamie county. Through a bridge on this right of way Honey Creek flows from the east, where it rises in the hills, and after passing under what is known as Frazier's Bridge, a wagon bridge at the edge of the right of way, it flows farther west for a little distance, and then makes a sharp turn to the south through bottom land. After passing under the Frazier bridge, the stream is very shallow in the ordinary stage of water, the bottom of its bed not lower than the land to the west, its western bank being a levee or embankment, whether natural or artificial does not appear, which alone restrains the water from leaving the channel and flowing on the adjacent land. On March 26, 1906, a gorge of ice, logs, brush, and debris formed at the Frazier bridge following a sudden rise of the stream, and the employees of defendant broke it up, causing the material composing it to be carried around the bend above referred to, where, as plaintiff alleges, the logs, brush, and debris lodged in the shallow channel of the stream as the water subsided, causing such an obstruction of the channel

that in the following June, when the water was again high, it broke over the levee or bank on the west side of the stream, flowing thereafter in a westerly course to plaintiff's land, causing the damage of which plaintiff complains. This damage resulted from the flooding of the greater part of his farm, which consisted of corn land, hay land, and pasture, destroying a large portion of the growing crops of corn and hay on said land. The jury returned a verdict for damages in the sum of $850, and judgment was rendered for plaintiff in this amount.

I. Over defendant's objection, plaintiff was allowed to testify as to the reasonable value of the corn crop and hay crop respectively growing on the flooded land before and after it was damaged by being flooded, taking into account the right of the plaintiff to go upon the land and do everything necessary to mature the crop and market it, had it not been destroyed by the flood. The court subsequently instructed the jury that, as to the crops growing on land, title to which was in plaintiff, the measure of damages was the difference between the value of the land with the crops growing thereon prior to the flood and its value after the flood, while, as to the crops growing on land belonging to plaintiff's wife, the measure was the difference in the reasonable market value of the crops standing and growing on said land immediately before and immediately after the injury occasioned by the flood, taking into account the right of plaintiff or a purchaser of the growing crop to mature and harvest said crop on said land. Counsel for appellant concedes the correctness of this instruction as to the crops growing on plaintiff's land; this being the rule recognized in previous decisions of this court. *Drake v. Chicago, R. I. & P. R. Co.,* 63 Iowa, 302; *Sullens v. Chicago, R. I. & P. R. Co.,* 74 Iowa, 659; *Harvey v. Mason City & Ft. D. R. Co.,* 129 Iowa, 465; *Blunck v. Chicago & N. W. R. Co.,* 142 Iowa, 146.

1. FLOOD WATERS: injury to growing crops: measure of damages.

But he contends that under this rule the objections to the question propounded to plaintiff as a witness above referred to should have been sustained, and that the same rule should have been applied with reference to crops growing on land belonging to plaintiff's wife; that is to say, that as to such crops the correct measure of damage would be the difference in value of the leasehold interest before and after the injury. In discussing these questions it must be understood that plaintiff made no complaint of damage to his land other than to the immature crops standing thereon, and that there was no evidence of any formal lease to plaintiff from his wife of the land owned by her, or of any rental which plaintiff had agreed to pay for the use of such land.

2. Same: evidence.

Under these circumstances, we do not think that it was error to allow plaintiff to testify as to the value of the immature crops destroyed, that is, as to the difference in value between the crops as they stood before the flooding of the land and their value afterwards, taking into account the right of plaintiff to mature and harvest them on the land, so far as they were not destroyed. It is true that in the *Drake* case, *supra,* it was held that it was error to allow a witness to testify that the crop which was immature when destroyed by the flood would have been worth a certain amount per acre; the answer being based on the number of bushels per acre which would have been realized had the crop not been destroyed. But the court conceded that the value of the premises covered by the immature crop should be estimated with reference to such crop as it was at the time of the injury. And in the *Harvey* case it is said: "Of course, in determining the value of the land before and after the injury the value and condition of the crops, if any, and the extent to which they are injured or destroyed, are material matters for the consideration of the jury." We think it was not error, therefore, to allow plaintiff to testify as to the value of the immature crop

before and after the flood as bearing upon the difference in value of the land preceding and following such injury.

It may be that, if plaintiff had been a tenant under a lease for a specified period of time, the court might consistently have directed the jury to determine the value of his leasehold interest in his wife's land before and after the injury; but, as it does not appear he had any right in the land save that he was lawfully raising crops thereon, we can not well see what other measure of damage could have been adopted with reference to such land than the difference in value of the immature crops growing upon the land before and after the injury occurred. The value of his right before the injury was the value of the immature crops, and the value of his right after the injury was nothing more than the value of the immature crops as they were after the injury was inflicted. We can not see that there was any error prejudicial to appellant in receiving the testimony of plaintiff which was objected to, or in the instruction as given with reference to the measure of damages for crops destroyed on his wife's land. As suggested in *Blunck v. Chicago & N. W. R. Co., supra,* it is obvious that where crops are growing on leased land the value of the crop destroyed is the basis of the recoverable damage.

II. In view of the testimony tending to show that the season was favorable to the raising of a corn crop, we think there was no error in permitting plaintiff to testify to the usual yield of corn per acre on such land 3. SAME. which he was farming, and the usual market value of corn per bushel in that locality. These elements of value were properly taken into account in estimating the value, at the time of the flood, of the corn crop growing on the land. It is true that there might be contingencies other than the flood which would affect the value of the crop; but, if plaintiff was entitled to some damage, in estimating that damage the best that could be done was to

determine what the value of the crop would have been in the course of ordinary events, had the flood not occurred. As said in *Blunck v. Chicago & N. W. R. Co., supra*: "It was not necessary, nor would it have been proper, to have gone into the question of the possible chances of the losses or injury incident" to the maturing and harvesting of the crop. "This is a world of chances; but the law does not take into consideràtion, in estimating damages for an injury actually inflicted, the possible chances that, had such injury not occurred, the like or some other misfortune to the subject might have arisen out of some other and independent operating cause. Rather the law of damages as here related deals in presumptions, and the courts will assume that in due and ordinary course a growing crop will mature and be harvested without loss, just as they will assume that the ordinary man will live to fill the period of his expectancy."

III.   Several errors are assigned relating to the action of the court in refusing to allow defendant to show previous and subsequent breaks in the levee or embankment which held the creek within its channel. This evidence might have had a tendency to show that other causes than the deposit of the material washed down the stream when the gorge was broken up by defendant's employees had caused or would cause a similar break in the levee or bank, and might have produced the damage to the plaintiff; but if it appeared to the jury from the evidence that the particular break complained of, resulting in the flooding of plaintiff's land, would not have occurred had the defendant's employees not caused the material forming the gorge to be deposited lower down in the channel of the stream so as to constitute a dam, then we think it was wholly immaterial what breaks might have occurred from other causes. The evidence tended to show that such a dam was in fact formed, and that the break complained of resulted therefrom, and to

4. FLOOD WATERS: negligence: evidence.

entitle plaintiff to recover damages it was only necessary
for him, as we think, to establish the fact that this result
followed the negligent acts of defendant's employees, if
those acts were within the scope of their authority as here-
after indicated.

IV.   One of the grounds of negligence alleged was that
defendant's employees had during the preceding winter
stretched wires across the east end of the Frazier Bridge
forming a part of the fence along the west
line of defendant's right of way, and that
these wires had been negligently allowed to remain longer
than proper and until the breaking up of the stream in the
spring, when they intercepted the drift and debris during
the time of high water and caused or contributed to the
formation of the gorge already referred to.   On this subject
the jury was instructed that the question whether the
wires were across the end of the bridge at the time the gorge
was formed and brought about the formation of the gorge
was material only as it might affect the duty of the de-
fendant as to removing said gorge.   But the action of the
court in submitting to the jury any question relating to
the wires across the end of the Frazier Bridge is com-
plained of because, as it is claimed, there was no evidence
whatever that such wires remained there until the forma-
tion of the gorge.   A witness for the defendant testified
that the wires had been cut several days before the gorge
commenced to form.   Plaintiff and another witness testified
on direct examination that these wires were there the night
before the gorge first appeared, and, while their testimony
was somewhat weakened on cross-examination, we think its
value as evidence rebutting the statements of defendant's
witness was not wholly destroyed.   For instance, plaintiff
testified on cross-examination that he did not know whether
the wires were cut before the stream came up or not, and
that so far as he knew they might have been cut before
the stream did come up; but this statement may have re-

5. SAME.

ferred to the night before the formation of the gorge and did not directly overcome his positive statement on direct examination that he saw the wires in place the night before the gorge was formed, for he admitted in his direct examination that the wires might have been cut during the night, and only testifies that during the night they had been broken or cut. Although the other witness for plaintiff on this subject was somewhat ambiguous on cross-examination as to whether he did in fact see the wires across the end of the bridge the day before the gorge was formed, he testifies positively that a post on which the wires had been strung was still there, although it had disappeared the next morning, and we think the court did not err in refusing to strike out his testimony on the subject.

V. The insufficiency of the evidence to show negligence on the part of defendant's employees in causing the material forming the gorge to flow down the stream when the flood was abating and be deposited in the shallow part of the stream so as to form a dam, causing the subsequent break in the embankment of which plaintiff complained, is vigorously insisted upon by counsel for appellant as a ground for reversal. But we think the question was properly one for the jury. If we are to concede that the employees were acting within the scope of their duty to the defendant or to the public in breaking up this gorge, then it was their duty to proceed in such manner as would not be likely to result in subsequent injury to plaintiff or other neighboring landowners. If a reasonably prudent person could have foreseen that the logs and debris liberated from the gorge would accumulate in another gorge or dam lower down the stream so as to impair the safety from subsequent floods of adjoining or neighboring land which might be flooded, should the embankment break as the result of the formation of this new dam, then the employees were bound to use reasonable care to see to it that the logs and debris thus liberated did not

6. SAME.

accumulate below to form such obstruction, and this whole question must have been for the jury to determine. If, in this respect, the jury was properly instructed, we do not see how we can interfere with its finding on the questions of negligence and proximate cause.

VI. Those who acted in breaking up the gorge at Frazier's Bridge were employees of the defendant working under the direction of defendant's section foreman. The 7. SAME: court instructed the jury that, if the wires instruction. which had been stretched across the end of the Frazier Bridge as a part of defendant's right of way fence were instrumental in causing the gorge to form there, then it would be the duty of the defendant company to remove such gorge or obstruction from the waterway, but that, if the gorge in question was formed naturally in the stream, it would not be within the scope of employment of defendant's employees to remove it, unless some portion thereof was on the defendant's right of way, or unless the gorge by backing the water and turning the stream to the eastward of defendant's track was threatening the safety of such track. As already indicated, there was some evidence tending to show that the gorge was caused or contributed to by the wires of the fence which had not been cut or removed, and there was other evidence that the gorge was in part on defendant's right of way, and that it caused the water to back up on the east side of the bridge and flow down on the east side of the track so as to imperil its safety. The sufficiency of the evidence in these respects to sustain a verdict is questioned, but we can not set it out in detail. It is sufficient to say that in our judgment it supported the instructions of the court and justified the submission to the jury of the questions left to them for determination.

In the light of the evidence, it can not be seriously disputed that the defendant's employees were acting in its interest, and not in their own interest or on their own be-

half, in breaking up the gorge. If they were acting for
defendant in good faith, believing that the cir-

8. SAME:
  negligent
  acts of agent:
  liability of
  principal.

cumstances were such as to require action on
their part in defendant's interest, then their
negligence would be chargeable to defend-
ant. Some discretion was necessarily left to the section
foreman in determining what should be done to protect de-
fendant's right of way and track, and to relieve defendant
from liability for damages which might result to adjoining
property owners from the formation of a gorge on defend-
ant's right of way or caused by the wires of its fence.
*Scott v. St. Louis, K. & N. W. R. Co.,* 112 Iowa, 54;
*Baxter v. Chicago, R. I. & P. R. Co.;* 87 Iowa, 488;
*Barmore v. Vicksburg, S. & P. R. Co.,* 85 Miss. 426 (38
South. 210, 70 L. R. A. 627); *Mobile & O. R. Co. v.
Stinson,* 74 Miss. 453 (21 South. 14, •522). It is not
pretended that these employees had consciously departed
from their employment, and were acting in their own in-
terest or for their own purposes, and the cases of *Golden
v. Newbrand,* 52 Iowa, 59; *Marion v. Chicago, R. I. & P.
R. Co.,* 59 Iowa, 428, and *Dolan v. Hubinger,* 109 Iowa,
408, are not in point. In *Healy v. Patterson,* 123 Iowa,
73, the servant for whose negligent act the defendant was
sought to be charged was one having no duty whatever with
reference to the machinery which he attempted to use,
so that the employee was a mere volunteer in attempting
to manage the machinery. In the case before us, defend-
ant's employees were not volunteers, but they were the
persons employed to look after the safety of defendant's
track, and to prevent any damage to adjoining property
owners from improper obstructions in the stream upon its
right of way or caused by its fence. They were not acting,
therefore, beyond the scope of their employment, if there
was any evidence to sustain the findings of fact which the
jury might have made in response to the instructions given
by the court on the subject. As we find there was such

evidence, we reach the conclusion that there was no error either in the giving of the instructions on the subject, or in refusing to set aside the verdict of the jury for lack of evidence in this respect.

VII.    The most serious questions in this case are as to whether the employees of defendant had reason to believe that the logs and debris flowing down the stream when the gorge was broken up by them would lodge farther down so as to obstruct the stream and cause the water of this or a subsequent flood to break through the embankment of the stream, and whether the break that subsequently resulted, involving damage to plaintiff, was the proximate result of their act.    These questions have already been referred to, but some further reference to the evidence should be made. The bed of the stream below the bend was shallow, and there was but slight fall, so that in the nature of things the current would be less swift and powerful than that which had brought this material from the hills to the east of the track against and under the railroad bridge.    A reasonable man, we think, could have anticipated that without some assistance from the employees in keeping it in the channel it would probably be deposited in such way as to form a further obstruction.    According to the testimony of some of the witnesses for plaintiff, defendant's section foreman seems to have realized this danger and been indifferent to it.    According to this testimony, his object was to get the gorge loosened up and the material composing it around the bend out of sight from the railroad track. Defendant's employees used pike poles in loosening the logs out of the gorge, and the jury may well have believed that, had they used reasonable care, these employees could have kept the logs afloat to a lower point in the stream where there would have been less danger of causing an overflow from a subsequent flood, or could have taken them out of the stream and avoided such danger.    Had these larger

9. SAME:
negligence:
proximate
cause:
evidence.

obstacles not been allowed to lodge in the stream, the brush and rubbish might reasonably have been expected to be washed away without further damage.

Many photographs have been presented as a part of defendant's evidence, relied on as showing conclusively that the bed of the stream below where the break occurred was in its natural condition full of logs and rubbish, so that the damming back of the water in the subsequent flood could not properly be attributed to the presence of the logs and rubbish coming down from the gorge. But some of the witnesses identified particular logs subsequently found below the break in the embankment in June as having formed part of the gorge which was broken up by defendant's employees in March, and we can not say as a matter of law that there is no evidence to support a finding that the negligence of defendant's employees in not seeing that these logs were carried further down the stream or were removed from it did not contribute in an important degree to the formation of the obstruction in the bed of the stream which caused the break in the embankment in June resulting in the injury to plaintiff's land. We think there was sufficient evidence of negligence, and of the break in the embankment as the proximate result thereof, to carry the case to the jury.

VIII. The verdict is complained of as excessive; but, in view of the evidence as to the value of the crops destroyed, we can not say that it is unreasonable. Plaintiff lost almost the entire product of nearly a hundred acres of land which was either planted in corn or appropriated to the raising of a crop of hay, and, if defendant was liable at all, the plaintiff was entitled to very substantial damages for this loss. We see no basis on which we could reduce the amount of the verdict.

Finding no prejudicial error in the record, the judgment is *affirmed.*