## FOLSOM vs. THE APPLE RIVER LOG-DRIVING COMPANY.

EVIDENCE. *(1) Refreshing memory by written memorandum. (2) Credibility of the evidence based on such memorandum, for the jury.*
MEASURE OF DAMAGES: *(3) For injury to crops by flowage.*
CAUSE OF ACTION. *(4, 5) Who liable for damage caused by concurrent acts of two wrongdoers.*

1. A witness who testifies that he made a correct written memorandum of certain facts at the time of their occurrence; that, the original being defaced, he had, before starting from home for the place of trial, made a correct copy thereof; and that, such copy having also become defaced, he had caused another copy to be made thereof, which he knows to be correct — may use such second copy to *refresh his memory* at the trial.

2. When such a memorandum contains estimates made by the witness of the quantity and value of hay destroyed by the flowage of certain land, it is for the jury to determine the value or credibility of the testimony.

3. In an action for injuries done to plaintiff's crops by the flowing of his land, the measure of his damages is the value (while standing upon the ground) of so much of the crop as was wholly destroyed, and the depreciation in value of the remainder, resulting from the flowage.

4. One wrongdoer, by whose fault damage is caused to a party free from fault, cannot relieve himself from liability therefor by showing that some other wrongdoer contributed to produce the injury.

5. There being a bridge, below plaintiff's dam, over the stream in which defendant's dam is maintained, which bridge did not obstruct the water *at its natural flow*, there was no error, as against defendant, in charging the jury that, "if the defendant, in using the water *beyond its natural flow*, would not have overflowed plaintiff's land *had there been no obstruction at the bridge*, that would not excuse defendant from liability to the plaintiff, provided defendant had notice of such obstruction and of the fact that its effect, together with defendant's use of the water beyond the natural flow, would be to flow plaintiff's land;" and that if such obstruction and such effect thereof were known to defendant's agent employed to manage its dams, it must be regarded as known to defendant.

APPEAL from the Circuit Court for *Polk* county.

Action for damage to plaintiff's lands, consisting chiefly of hay meadow along and adjacent to Apple river, a navigable stream. The complaint avers that for four years defendant had maintained certain dams upon said river and its tributa-

ries above plaintiff's lands; that during the summer and fall of each of said years, it accumulated, by means of said dams, large bodies of water above the same, and, at divers times during those seasons, unlawfully permitted the waters so accumulated to be discharged down Apple river in large quantities, by means of gates hoisted for that purpose, whereby plaintiff's lands were inundated and overflowed, and the grass and hay thereon injured and destroyed, to his damage $1,100; and judgment is demanded for that sum, with costs, and also to abate the dams as a nuisance.

The answer denies that defendant, by means of said dams or otherwise, ever caused the waters of Apple river to overflow the premises in question, and alleges that the injuries complained of " were caused solely by the setting back of the waters of that river by means of the negligent construction of the piers of a bridge built across said river just below said premises, and the freshets which have occurred upon said river from heavy rains and melting snows." The answer further alleges that, during all the time mentioned in the complaint, defendant was authorized by ch. 430, P. & L. Laws of 1868, to maintain said dams; that in their maintenance it complied strictly with the authority so conferred, and that it thereby greatly improved the navigation of the Apple river and its tributaries.

The plaintiff, as a witness in his own behalf, was permitted, against objection, to use a memorandum for the purpose of refreshing his memory, relative to the several amounts of hay destroyed or injured by the flowage of his premises in each of the years mentioned in the complaint. His statements in regard to this memorandum, and the grounds upon which it was objected to, will more fully appear from the opinion.

The instructions given in respect to the rule of damages, and in respect to the alleged obstruction of the waters of Apple river, in times of high water, by the bridge mentioned in the answer, will also sufficiently appear from the opinion.

The plaintiff had a verdict and judgment for damages; and the defendant appealed.

*Vilas & Bryant,* for appellant, argued, 1. That even if plaintiff could give evidence of estimates of probable crops, and the probable profits of the same, to show his damages, it was not competent for him to "refresh his memory" (as it is inaccurately termed) from a copy of a copy of an original memorandum. *Lord Talbot v. Cusick,* 17 Irish Common Law R., N. S., 216–220; *Sandwell v. Sandwell,* Comb., 445; *Jones v. Stroud,* 2 C. & P., 196; *Burton v. Plummer,* 2 Ad. & E., 343; *Tanner v. Taylor,* cited in *Doe v. Perkins,* 3 Term, 749; *Jacob v. Lindsay,* 1 East, 460; *Downer v. Rowell,* 24 Vt., 343. In no case has it been permitted to use copies for that purpose, unless careful comparison has been made and the copy verified thereby, and the fact of such verification first fully proven. *C. & A. R. R. Co. v. Adler,* 56 Ill., 344; *Mead v. McGraw,* 19 Ohio St., 55. 2. That the rule of damages adopted by the court in its instructions to the jury, and the admission of evidence in accordance with that rule, left the damages to be determined by random guesses or mere speculations as to the amount of crop which would have been produced each year if the land had not been flowed, the price each crop would have brought, the cost of harvesting, etc. There was no need of resorting to this conjectural method of ascertaining damages. Plaintiff had owned the land for years before the defendant was incorporated; its yield had been good during those years; he could easily have testified to the average amount of his annual returns for the several years before the flowage, and his returns for each year of flowage; the difference would have been a reasonable basis for the estimate of damages (due allowance being made for any difference in prices for those years), if the damages are to be fixed by crops lost and not by the rental value of the land. But the evidence shows that before and during the years of the flowage, plaintiff had let out the hay on shares, to be

cut.   His diminished rental or income from the land furnished
the true measure of his damages.   *Chase v. N. Y. C. R. R.
Co.,* 24 Barb., 275; *Easterbrook v. Railway Co.,* 51 id., 97;
*Francis v. Schœllkopf,* 53 N. Y., 155; *McKnight v. Ratcliff,*
44 Pa. St., 156; *Johnson v. The United States,* 2 Nott &
Hunt., 391.   3. That the jury were erroneously instructed as
to the effect upon the right to recover in this action of the
fact (if found) that defendant's dams would not have injured
plaintiff's land but for the obstruction of the river by the
bridge below such land.   Defendant was authorized by its
charter to build its dams.   The acts it was authorized to do,
did not contemplate the flowage of plaintiff's land, and there-
fore no provision for taking the land was made in its charter.
There is no proof that it raised the water higher than was
necessary for its lawful use.   To authorize the company to
improve the navigation of the river by building a dam, and
then hold its otherwise lawful use of the dam tortious because
others have afterwards placed obstructions in the river, is cer-
tainly a hardship.   The local authority which caused the ob-
struction ought to be held answerable to the plaintiff, if its
subsequent and unlawful act caused or greatly increased the
injury to his land.   The bridge itself was the nuisance.
*Blanchard v. W. U. Tel. Co.,* 60 N. Y., 510; *Sheboygan v.
R. R. Co.,* 21 Wis., 667; *Potter v. Menasha,* 30 id., 492.

For the respondent, a brief was filed by *L. P. & J. K.
Wetherby,* and the cause was argued orally by *J. K. Wether-
by* and *S. U. Pinney.*   They contended, 1. That the witness
*Folsom* was properly permitted to refresh his memory by
the use of the memorandum which he produced.   1 Greenl.
Ev., § 436; 2 Phil. Ev., 920; 11 Wend., 485; 5 Sandf., 221;
11 Grat., 527, 543, 545; 15 Wis., 44, 45; 17 id., 675; 20 id.,
412.   2. That the question of the alleged effect of the bridge
below plaintiff's land in setting back the water upon it, was
properly disposed of.   (1) It was a public bridge, used as a
highway, and had been constructed long before the defendant's

charter was granted; defendant had notice of the existence of such bridge when it took its charter; and it was clearly shown that the bridge did not set back the water at its natural flow; and if it had that effect when the water was let off by the defendant in unusually large quantities for the purpose of driving logs, then defendant is liable. (2) There was really no evidence from which the jury could have found that the bridge set the water back on plaintiff's land at any time; the court might have taken the question from the jury entirely; and therefore, even if the instructions given on the subject were erroneous, that would be no ground of reversal. 3. That the court gave to the jury the correct rule of damages. *Williams v. Currie*, 1 Man., G. & S., 847; *Seamans v. Smith*, 46 Barb., 320; 15 Conn., 347.

COLE, J.    One exception relied on for a reversal of the judgment is that taken to the ruling of the circuit court holding that the witness *Folsom* might resort to a paper to refresh his memory as to matters about which he was testifying.    The witness gave this account of the paper: " This memorandum," he said, " is a copy drawn recently from an original which I made at the time of the facts or occurrences it refers to.    This copy was made in town — some of them in Alden.    This paper was drawn from and is a copy of a paper which I copied from my original memorandum of the facts at the time of their occurrence.    The copy from which I copied this was brought by me from home, and was not kept by me because it had been defaced in carrying it, and hence this new copy was drawn off from it by Kittle, I dictating the whole.    I know that copy is correct; a true copy from the original, which was also defaced; and the original memorandum was correct when I made it."    The witness added that he resorted to the paper to refresh his memory, and in resorting to it his memory was refreshed.

The objection to the witness testifying from the paper was

Folsom vs. The Apple River Log-Driving Company.

placed upon the ground that it did not appear to be a memorandum made at the time, or a copy of the memorandum made at the time, of the occurrences. We are of the opinion that the objection was properly overruled. Upon this subject Prof. Greenleaf lays down the rule as follows: "Though a witness can testify only to such facts as are within his own knowledge and recollection, yet he is permitted to refresh and *assist his memory* by the use *of a written instrument,* memorandum, or entry in a book, and may be compelled to do so, if the writing is present in court. It does not seem to be necessary that the writing should have been made by the witness himself, nor that it should be an original writing, provided, after inspecting it, he can speak to the facts from his own recollection. So, also, where the witness recollects that he saw the paper while the facts were fresh in his memory, and remembers that he then knew that the particulars therein mentioned were correctly stated. And it is not necessary that the writing thus used to refresh the memory should itself be admissible in evidence; for if inadmissible in itself, as for a want of a stamp, it may still be referred to by the witness. But where the witness neither recollects the fact, nor remembers to have recognized the written statement as true, and the writing was not made by him, his testimony, so far as it is founded upon the written paper, is but hearsay; and a witness can no more be permitted to give evidence of his inference from what a third person has written, than from what a third person has said." 1 Greenl. Ev., § 436. The learned author refers to many authorities in support of the doctrine of the text; and the following cases cited by counsel on the argument are substantially to the same effect: *Huff v. Bennett,* 6 N. Y., 337; *Howland v. The Sheriff of Queens Co.,* 5 Sandf., S. C., 219; *Harrison v. Middleton,* 11 Gratt., 527; *Lord Talbot v. Cusick,* 17 Irish Law R., N. S., 216; *Chicago & Alton R. R. Co. v. Adler,* 56 Ill., 344; *Mead v. McGraw,* 19 Ohio St., 55. In the present case, the witness, after resort,

ing to the memorandum, was able to speak of facts from recollection. It is true, this kind of evidence is open to more or less suspicion because of the unconscious effect which the memorandum may have upon the mind of the witness, and which may lead him to suppose he recalls facts when he really does not. But this affects the credibility rather than the competency of the testimony. The witness gave estimates of the quantity and value of hay injured or destroyed in the years 1871, 1872, 1873 and 1874, by the flowage complained of. It is said that such estimates were mere wild guesses, and afforded no basis for the assessment of damages, and for that reason ought to have been excluded. But it is obvious that this objection also goes to the credibility or value of such testimony. We must presume that the jury scrutinized it, and only gave it the consideration which should be attached to it. It was not impossible for the witness, by an effort of memory, to recall such dates and amounts as he detailed in his testimony. It was the province of the jury to determine what his estimates were worth.

Another question arising upon the exceptions relates to the rule of damages. It appears that the plaintiff owned meadow land lying along and adjacent to Apple river, from which he was accustomed to cut hay. It is alleged that these meadows were overflowed by large quantities of water which were discharged from the dams of the defendant during the season for driving logs, which usually continued from about the middle of May until about the first of July, and the hay and grass thereon were destroyed or injured in value in consequence of such flowage. The plaintiff claimed that he was entitled to recover for such injury the value of the standing grass which was totally destroyed, and the depreciation in the remainder resulting from the flowing. The defendant claimed, and asked the court so to instruct the jury, that if they found from the evidence that the plaintiff's premises were injured and overflowed by the act of the defendant, the measure of

damages was the difference between the rental value of the premises had they not been injured, and the rental value with the injury, together with interest on the same. The learned circuit judge adopted the rule as claimed by the plaintiff, as affording the true measure of damages. We think this ruling was correct. The hay was partly grown when injured or destroyed, and it seems to us that the net presumed value of the hay, less its actual value, measured the actual damages sustained. Suppose it had been a crop of wheat nearly ripe: would it be just to allow the plaintiff only the difference between the rental value of the premises uninjured by the flowage and the rental value as they were? Would that give him compensation for his damages? Would he not be entitled to recover the value of the crop standing upon the ground? It seems to us clear that he would be entitled to recover that amount. In this case the plaintiff, a farmer, testified to the number of tons of hay injured or wholly destroyed each year by the flowage, and the actual value of the hay standing upon the ground. It is said that this was resorting to a conjectural method of estimating the damages. But it would seem to be the only way to arrive at the value of the hay destroyed. If the estimate of the witness was extravagant, his testimony could be and in fact was controverted by that on the other side. But that the value of the crops, and not the rental value of the land, was the true rule of damages, is shown by *Williams v. Currie*, 1 Man., G. & Scott, 841; *Benjamin v. Benjamin*, 15 Conn., 347; and *Seamans v. Smith*, 46 Barb., 320; to which we were referred on the argument. The case of *Williams v. Currie* was an action of trespass by a tenant against the landlord for damages to the tenant's crops, which had been caused by the landlord's selling, felling and removing timber without applying for leave to enter. The jury assessed the damages at £300, and the court refused to interfere, although the net value of the entire crops did not exceed £200. Nor do we think there is

anything in *Chase v. N. Y. Central R. R. Co.*, 24 Barb., 275, *Easterbrook v. Erie Railway Co.*, 51 id., 94, and *Francis v. Schœllkopf*, 53 N. Y., 152, in conflict with this rule. Those were actions for injuries to real estate caused by the wrongful acts of the defendants. The plaintiffs were permitted to recover compensation for the injury; and in the latter case, which was for a nuisance, the court decided that the proper measure of damages was the difference in the rental value free from the effects of the, nuisance and subject to it. It is true, in the case before us, the defendant was authorized by its charter to erect and maintain dams on the river to facilitate the driving of logs (ch. 430, P. & L. Laws of 1868); but it requires no argument to show that it had no right to overflow or injure the lands and crops of the plaintiff without making full compensation therefor.

It appeared that there was a bridge across the river below the premises of the plaintiff, which, it was claimed, at times of high water, obstructed the water or caused it to set back and overflow the banks. It was not claimed that the bridge would produce any such effect if the waters were left to their natural flow, but only when unusual quantities were discharged from the dams above. As bearing upon this point, the court gave the following instructions:

"If the company, in using the water beyond its natural flow, would not have overflowed the plaintiff's meadow had there been no obstruction at the bridge, but would, in using the water beyond its natural flow, have overflowed the plaintiff's meadow by reason of the obstruction at the bridge, that fact would not excuse the company from liability to the plaintiff, provided the company had notice beforehand of such obstruction, and of the fact that its effect, together with the company's use of the water beyond its natural flow, would be to flow the plaintiff's land.

"And if such an obstruction and such an effect therefrom are open, patent, and known to the company's agent employed

to manage the company's dams and conduct their drives, then, for the purposes of this action, they are known to the company.

"If you find from the evidence that the bridge and the wing jam formed there did not contribute to the overflow of plaintiff's meadow, by causing the water to set back far enough to have the effect of contributing to such a result, then, of course, the bridge and the jam formed there have nothing whatever to do with this case.

"And if you find from the evidence that the bridge did have such an effect, then the company, after once learning, that, with the bridge as it was, floods let out from their dams in greater volume or force than the natural flow of the stream were likely to overflow the plaintiff's meadows, would have no right, as against the plaintiff, to let out such floods, and, if they did let them out, would be liable for damage thereby done to his land."

We think these instructions were as favorable to the defendant as the law would justify. It was certainly no defense to the action that some other wrongdoer had contributed to produce the injury. This disposes of the material questions in the case.

*By the Court.* — The judgment of the circuit court is affirmed.