ADOLPH BLUNCK v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

Parol evidence of occupancy of real property. Occupancy of real
1 property is a fact which may be shown by parol even though it
is under a lease which has been reduced to writing.

Opinion evidence: OBSTRUCTION OF SURFACE WATER. A witness who is
2 called upon to state the fact conditions as he has observed them
may testify that the bridges and culverts in a railway embankment are insufficient to carry off the water in times of flood, and
the evidence is not subject to the objection that it is a conclusion.

Action by tenant for injury to crop: PROOF OF TITLE. To recover damages to crops injured or destroyed by the obstruction of surface
3 water a tenant is only required to prove his possession of the
premises, he is not required to go further and prove the nature
of his title.

Surface water: OBSTRUCTION OF FLOW : DAMAGES : INSTRUCTIONS. Damages for flooding land with surface water, where it is a necessary
4 result from the construction of a railroad in the usual manner,
are a part of and comprehended in the original assessment of
damages by an appropriation of the right of way; and where the
record shows that there was no well defined channel but the water
in times of freshets naturally flowed in one broad sheet over
an entire tract of bottom land, across which the road was constructed, the question of whether the damages complained of,
arising from the manner of constructing the road, were paid when
the company acquired its right of way was for the jury.

Damage to growing crops: MEASURE OF RECOVERY. Where property
5 destroyed by flooding land with surface water has a value which
can be accurately ascertained independently of any injury to the
soil, as growing crops, a recovery of the value of the thing
destroyed, may be had, either by the owner of the fee or a tenant,
and its value is not measured by the difference in value of the
land before and after the destruction.

*Appeal from Woodbury District Court.*—HON. WM.
HUTCHINSON, Judge.

THURSDAY, APRIL 8, 1909.

SUIT at law to recover damages for flooding ·farm lands.  The defendant appeals from a judgment for the plaintiff.—*Reversed* on rehearing.

*Wright, Call & Sargent, James C. Davis, George E. Hise* and *A. A. McLaughlin,* for appellant.

*Dickson & Page,* for appellee.

SHERWIN, J.—The opinion on the original submission of this case will be found in 115 N. W. 1013. , A rehearing was granted because of our conviction that a wrong conclusion was reached in the fourth division of the opinion filed, and this opinion will discuss that feature of the case only.  On all other matters the opinion of our lamented Brother Bishop is adopted and incorporated herein in his own language, except as to a few minor matters ·of detail.  Plaintiff claims that during the year 1903 he was the lessee in possession of the Barlow lands lying in townships 46 and 47, range 88.  Respecting the lands, it is conceded that the general slope thereof is to the south; and they are traversed in part by two streams, Big Whisky creek and Little Whisky creek, flowing down ·from the higher lands lying to the north.  Big Whisky creek flows on to the south; the waters ultimately finding their way to the Missouri River.  Little Whisky creek, on reaching the center of section 25, ceases to be a stream with defined banks.  From there the waters spread out over the general surface to the south.  Prior to said year 1903 the defendant had constructed its line of railway east and west across the southern portion of the lands.  In general the roadbed as constructed consisted of an earth embankment; the top being brought to an elevation of four or five feet above the natural surface.  At the crossing of

the Big Whisky a bridge was put in 108 feet in length.
Some distance to the west another bridge 75 feet in length
was put in.   Between the bridges were put in two culverts,
each about four feet square.   Plaintiff charges negligence
in that the openings for the passage of water in times
of heavy rainfall and floods were inadequate; further,
that the space beneath the bridge spanning the Big Whisky
was allowed to become obstructed and partially closed up
by earth and debris.   And he says that during the flood
period in the summer of 1903, by reason of the negli-
gent conditions so brought about and existing, the waters
which overflowed the banks of the creeks, augmented by the
heavy rainfall, were cast back and forced to stand upon
certain of his lands, whereby his hay crop growing there-
on was injured and destroyed to his damage in an
amount stated.   The allegations of the petition were met
by a general denial.

     I.   The allegation of the petition is that plaintiff
during the year 1903 was in possession of the lands as
lessee of one Barlow under a written lease.   On the trial

1. PAROL EVI-
   DENCE OF
   OCCUPANCY
   OF REAL
   PROPERTY.

a son of plaintiff was called as a witness,
and asked whether or not his father was
occupying the lands in question in the year
1903 as a tenant of Barlow.   This was ob-
jected to as hearsay, as calling for a conclusion of the
witness, and not the best evidence; and in connection with
the objection, and as a basis therefor, attention was called
to the fact that the petition alleged a written lease.   The
objection was overruled, and the witness answered the
question in the affirmative.   It is said that here was error.
We think otherwise.   The question was directed to the
fact of occupancy.   That fact was material to the issue,
and it could not have been proven in any other way than
as attempted.   It is true that the petition alleges a writ-
ten lease; but the question objected to had no relation
to the matter of the existence of such an instrument, nor,

conceding its existence, to the terms or provisions thereof. And certainly, where material, one may prove the fact of his occupancy of real estate by parol, even though it is made to appear in some other way that the contract of lease had been reduced to writing. "The fact of appellant's tenancy or occupancy of the real estate was a fact which existed independently of any written lease which he might hold, and, as such, might be shown by parol evidence." *Hammon v. Sexton,* 69 Ind. 37. The case of *Wallace v. Wallace,* 62 Iowa, 651, relied upon by appellant, is not in point. There the parties to the action were claiming rights in the real estate, which was the subject of the action, adversely to each other.

II. Several witnesses were called on behalf of plaintiff, and, over objection, allowed to testify that the bridges and culverts in the railway embankment were insufficient to carry off the water in times of flood.

*2. OPINION EVIDENCE: obstruction of surface water.* The objection made in each instance was that the evidence was incompetent, that the question called for a conclusion of the witness, and the witness was not shown to be competent. There was no error. Not only the particular questions objected to, but the general course of the examination, plainly indicated that the several witnesses were called upon to state to the jury the fact conditions as such had actually come within their observation. They were not called upon to draw conclusions, or to contribute opinions. They were asked to state what were the facts made visible to their eyes, and, as bearing upon the issue of improper construction, the evidence was competent. *Willitts v. Railway,* 88 Iowa, 281.

III. Plaintiff did not put in evidence the written lease of which allegation was made in the petition, nor did he go farther in making proof of his rights in the real estate than to show that he was in possession as a tenant. Defendant requested an instruction, in substance, that

there could be no recovery, for the reason that the evidence did not make disclosure of the amount or extent of the interest, if any, of the plaintiff in the lands, or in the grass and hay claimed to have been injured; and error is predicated upon the refusal of the court to direct the jury as so requested. We think there was no error. In all cases sounding in trespass where the injury complained of is to the possession, and the person proceeded against is a mere tortfeasor, proof of possession alone in the plaintiff is sufficient to maintain the action. Possession being shown, the intruder can not put plaintiff on proof of his title. 28 Am. & Eng. Ency. 573. And, in the case of a tenant seeking to recover for crops injured or destroyed, it is not material that within the possibilities he may be holden to his landlord or some third person for an interest in such crops. Jones on Landlord & Tenant, section 645. Proof of possession being sufficient, plaintiff was not bound to go any farther and exhibit the muniments of his title. It is a rule of our statute that a party to an action shall not be compelled to prove more than is necessary to entitle him to the relief asked for. Code, section 3639.

3. ACTION BY TENANT FOR INJURY TO CROP: proof of title.

IV. The record shows that there is no well-defined water channel west of Big Whisky creek within the limits of the land involved in this controversy, and that the natural flow of the surface water is to the south and west, in a broad sheet extending across the entire Barlow ranch west of Big Whisky creek. Based upon the facts so shown, the defendant asked the following instructions, which were refused:

4. SURFACE WATER: obstruction of flow: damages: instructions.

If the jury find, from a fair preponderance of the evidence, that the land west of Big Whisky creek, over which defendant's embankment and railway track were constructed and located, is nearly level, that there is no natural or artificial stream crossed by said embankment,

and no defined channel or way in which the water, coming onto said land to the north of said railway track, could pass to the south, even if defendant's right of way and railway embankment had not been constructed, and if you further find that, by reason of the character and condition of the land at the time defendant's embankment was originally constructed, such railway construction would necessarily interfere with the flow of surface water and cause it to accumulate and stand on the land from which the right of way is taken, then, if you so find, you are instructed that for such necessary interference with the flow of surface water as was occasioned by the proper construction of said railway over said land no recovery in this action can be had.

A railway company, by virtue of acquiring right of way across a tract of land, acquires the right to construct its track in the usual and ordinary way. It may construct it upon an embankment, if such is the better method, considering the character and lay of the ground in the immediate locality. It is not obliged to so construct its road as to avoid entirely the obstructing or interfering with the natural flow of surface water which does not flow in well-defined channels. On the contrary, it may divert and obstruct the flow of such water to the extent that the same may be reasonably necessary to accommodate the same to the customary and usual mode of constructing a railroad in such places, and to the extent reasonably necessary to enable the railway company to so construct and maintain its road as to promote the reasonable and safe operation of trains thereover.

And on its own motion the court instructed as follows:

You are instucted, as a matter of law, that it is the duty of the railway company, in building its railroad when it crosses a stream or lowland, to provide passageways for the water reasonably sufficient to allow it to flow through without being diverted from its natural course or being backed up so as to cause damages to the property of another.

Complaint is made because the court refused to give

the instructions asked by the defendant, and because it
gave the one quoted.   We think there was error in both
respects.   The requests correctly stated the rule that has
been adopted by this court, and should have been
given, and the instruction given was too broad, in that it
told the jury as a matter of law that the defendant in
building its railroad across lowland must in all cases pro-
vide a passageway for surface water without diverting it
from its natural course.   In this State the rule of damage
is the difference between the value of the land immediately
before and after the taking of the right of way.   *Pingery
v. Railway Co.*, 78 Iowa, 438; *Harrison v. Railroad Co.*,
36 Iowa, 323; *Ham v. Railway Co.*, 61 Iowa, 716.   And
in determining this damage it is right and proper to con-
sider every element of damage that can be reasonably an-
ticipated, before the road is built, and what really does
exist and is apparent after the road is constructed.   The
real question in such cases being how much has the mar-
ket value of the property been diminished by taking the
right of way therefrom, it is manifest that in determining
and fixing such damages all matters and conditions which
may reasonably be expected to follow the location and op-
eration of the road and affect the value of the land should
be considered.   Thus in *Kucheman v. Railway Company*,
46 Iowa, 366, we approved an instruction which, after
stating the general rule as to damage, said:  "And you
may also consider any and all other matters and circum-
stances, as shown by the evidence, tending to show the
effect upon the value of said property by the location and
construction of the railroad."   In *Small v. Railway Com-
pany*, 50 Iowa, 338, we said:  "Exposure to fire, so far
as it is unavoidable, most certainly results proximately
from the use of the road.   The exposure, then, is a part
of the injury for which right of way damages are allowed,
and it is presumed to be paid for when such damages are
paid."   The rule as to increased risk on account of fire

was also approved in *Pingery v. Railway Co., supra,* and in *Dudley v. Railway Co.,* 77 Iowa, 408.

In *Winklemans v. Railway Co.,* 62 Iowa, 14, a question arose as to the competency of testimony showing that a spring had been destroyed by the construction of the road, and we said: "We think the evidence was competent, and deem it sufficient to say that the plaintiff did not by the evidence seek to show that the road was improperly constructed. No witness was asked whether the embankment which destroyed the spring was necessary to the proper construction of the road. It will be presumed that it was necessary."

In *Britton v. Railway Company,* 59 Iowa, 540, the identical question now before us was determined adversely to the appellee's contention. There on the trial the question was asked: "State what effect the construction of the grade of this railroad through this land has upon that portion which is low and sometimes wet—whether or not it injures it." The answer was: "I think it had a tendency to back water upon it." In disposing of the question as to the competency of the testimony, we said: "If we understand counsel, it is claimed the question and answer are objectionable, because the tendency of the evidence was to permit a recovery because of the faulty construction of the road. We do not think any such thought is contained in either question or answer. If, because of the construction of the road, the land was made more wet than it otherwise would have been, this fact should be considered in estimating damages, and this was all the plaintiffs sought to prove."

In *Drake v. Railway Co.,* 63 Iowa, 302, it was said: "If we could suppose a case where the construction of a railroad would necessarily interfere with the flow of surface water, and cause it to accumulate and stand on the land from which the right of way is taken, the injury that would accrue therefrom should, we think, be considered by

the commissioners and embraced in their appraisement of right of way damages. The landowner is entitled to be paid not merely for the value of the land taken, but for all incidental injuries which must necessarily result from the 'proper construction and maintenance of the road." See, also, *Hileman v. Railway Co.,* 113 Iowa, 591, and cases cited therein; *Kersey v. Railway Co.,* 133 Pa. 234 (19 Atl. 553, 7 L. R. A. 409, 19 Am. St. Rep. 632); *Weyer v. Railway Co.,* 68 Wis. 180 (31 N. W. 710); *Churchill v. Beethe,* 48 Neb. 87 (66 N. W. 992, 35 L. R. A. 442); *Railway Co. v. Kuhn,* 38 Kan. 104 (16 Pac. 75); *Railway Co. v. Witt* (Okl.) 91 Pac. 897, 13 L. R. A. (N. S.) 237.

In 2 Lewis on Eminent Domain, section 496, is said: "It would be difficult to enumerate the various elements of damages proper to be considered when part of a tract is taken. . . . Any interference with the drainage of the land or with the flow of surface water, or with the water supply, are recognized by all authorities as proper items to be taken into account in assessing the damages."

The Massachusetts court says: "The cuts and embankments and necessary gutters of the railroad track will unavoidably modify the flow of surface water, and sometimes cause damage by keeping it back or projecting it in large quantities upon lands adjoining the road. Injuries to land from such cases would seem clearly to fall within the class of effects which have been held to afford ground for the assessment of damages under the statute." *Walker v. Old Colony Ry. Co.,* 103 Mass. 10 (4 Am. Rep., 509). See, also, *Morrison v. Bucksport Ry. Co.,* 67 Me., 353; Mills, Eminent Domain, sections 160, 189; *Pflegar v. Railway Co.,* 28 Minn. 510 (11 N. W. 72); *Line v. Railway Co.,* 218 Pa. 604 (67 Atl. 899).

Under the authorities cited, any damage necessarily caused by the proper construction of the defendant's road was included in the damages paid for the right of way and

are not proper elements of damage in this case. It must not be overlooked that we are not now dealing with the case of an obstruction to a natural water course, nor with a case where the surface water may properly be taken care of by ditches or culverts. The record fairly shows that the surface water could not, at times other than when there were unusual freshets, be taken care of in any way without trestle work across the entire bottom in question, and we think the question whether, under the conditions shown, the damage now complained of was damage for which the defendant paid when it acquired its right of way, should have been submitted to the jury.

V.  On the subject of damages, the court told the jury, in the tenth instruction, that, as applied to this case, the measure "would be the fair and reasonable market value of the hay on the premises in question that plaintiff was unable to cut at the time of the alleged injury, as shown by the evidence."

5. DAMAGE TO
GROWING
CROPS:
measure of
recovery.

This instruction is assailed on several grounds:  (a) There is no evidence in the record to show when the alleged injury occurred; (b) there is no evidence of the value of the hay at such time; (c) no reference is therein made to the chance of loss or injury to the hay in cutting and stacking; (d) as the hay was injured, if at all, before being cut, the instruction announces an incorrect rule, in that the true measure in such cases is "the difference between the value of the land or the value of plaintiff's interest therein before and after the injury."

In our discussion we shall not attempt to follow the precise order as thus marked out. It is true there is no direct testimony in the record on the subject of when the injury occurred in the sense that any witness testified to the date of the flood, but such was not required. It was in testimony: That the haying months are August and September; that in the year in question, "at the time the hay should have been cut, there was a good stand of a good

quality of hay on the land"; that plaintiff was prevented from cutting the hay by the flood water backing upon the land. This was sufficient. It was not necessary, nor would it have been proper, to have gone into the question of the possible chances of loss or injury incident to the cutting and stacking of the hay. This is a world of chances, but the law does not take into consideration, in estimating damages for an injury actually inflicted, the possible chances that, had such injury not have occurred, the like or some other misfortune to the subject might have arisen out of some other and independent operating cause. Rather the law of damages as here related deals in presumptions, and courts will assume that in due and ordinary course a growing crop will mature and be harvested without loss, just as they will assume that the ordinary man will live to fill the period of his expectancy. The question of how damages in such cases are to be estimated is one not altogether devoid of difficulty. It must be confessed that the courts of the country are not agreed upon the subject, and the cases are in more or less confusion. Looking over our own cases, we do not find any involving the question in the precise form as now presented. The general subject, however, of the measure of damage to be applied in cases of trespass on real estate, has frequently been before the court and treated of in opinion. We shall make no attempt to review all the cases. It will be sufficient simply to call attention to those which in principle support the conclusion which, as we think, must be given effect to work a disposition of the instant case. Without doubt, it is the rule of our cases that where the action is by the owner of the fee, and damages are claimed for an injury thereto caused by flooding, or, for that matter, by a fire set out, the proper measure is the difference between the market value of the land as it was immediately before the injury and its fair market value immediately after such injury. *Drake v. Railroad,* 63 Iowa, 302; *Sullens v. Rail-*

*road,* 74 Iowa, 666; *Harvey v. Railroad,* 129 Iowa, 465. And "where the land has been appropriated to a particular use, as by converting it into a meadow, or planting to a crop which is already growing at the time of the injury, the loss must be determined with reference to such existing condition." *Black v. Railway,* 122 Iowa, 32; *Willitts v. Railway,* 88 Iowa, 281; *Rowe v. Railway,* 102 Iowa, 286; *Drake v. Railway, supra.* In measuring the loss a distinction must be drawn, of course, between those things which can readily be replaced and those things concerning which restoration is impossible. As to the former, the cost of reproduction is regarded as a proper basis of computation; while, as to the latter, rental value must be taken as the basis. It is to be remarked, however, that the term "rental value," as applied to lands covered with a growing crop, means not what the lands may be rented for in the vicinity for ordinary purposes, but the value of the use of the lands for the purposes of maturing and harvesting the crop; and, of necessity, the value of the crop in the condition in which it exists at the time of the injury is the prime factor in the ascertainment of the value of the use. *Black v. Railway, supra; Lommeland v. Railway,* 35 Minn. 412 (29 N. W. 119); *Folsom v. Apple River Co.,* 41 Wis. 609; *Shotwell v. Dodge,* 8 Wash. 337 (36 Pac. 254); *Railway v. Ryan* (Tex. Civ. App.) 21 S. W. 1013; Sutherland on Damages, section 1023.

Obviously enough the rule of rental value, thus stated, must govern in cases presenting no more than an injury and damage to growing crops, and in respect of such cases it would seem to be proper practice to plead in direct language the value of the crop destroyed as the basis of the recoverable damage. If the thing destroyed, although it is a part of the realty, had a value which could be accurately measured and ascertained without reference to the soil on which it stands, or out of which it grows, the recovery may be the value of the thing thus destroyed.

and not for the difference in value of the land before and after such destruction. Sutherland on Damages, sections 1023-1049; *Smith v. Railway,* 38 Iowa, 518; *McMahon v. Dubuque,* 107 Iowa, 62; *Harvey v. Railroad,* 129 Iowa, 465; 13 Am. & Eng. Ency. 709. In principle there can be no difference, as far as the rule for the measurement of damages is concerned, between an action brought by an owner of the major estate and one brought by a tenant in possession. In the instant case it will be remembered that the hay crop was matured. Nothing remained but to harvest the same. The value thereof was sought to be fixed by estimating the yield in tons per acre, then taking the market value prevailing at the time in the vicinity, after deducting therefrom the cost of cutting and stacking. This was competent and proper under the authorities cited foregoing. We conclude that there was no error in the instruction.

For error in refusing the instructions asked by the defendant and for error in the instruction given, the judgment must be *reversed.*