STRAIGHT BROS. COMPANY, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**LANDLORD AND TENANT:** Action by Landlord for Damage to His Share of Rent. A landlord who leases on shares may maintain an action against third parties for damages to his share of the crops; especially is this true when the action is begun after the expiration of the lease, and after the landlord has received an assignment of the tenant's claim for damages.

**DAMAGES:** Avoidable Damages—Non-Necessity to Commit Trespass. The rule that one may not recover for avoidable consequences does not require that the injured party commit a trespass.

**DAMAGES:** Flooding of Lands and Injury to Soil. "The difference between the value of a farm as an entirety, immediately before and immediately after an unlawful flooding," which causes injury to the *soil*, is, or may be, a better measure of damages than such difference confined solely to the lands receiving the physical injury.

**DAMAGES:** Flooding of Lands and Injury to Crops. Injury to growing crops, and injury by reason of inability to plant or raise crops, caused by the unlawful flooding of lands, may very properly be worked out by determining the difference between the rental value of the land for the term in question, immediately before and after the flooding.

**DAMAGES:** Flexibility of Measures. Principle recognized that it matters little just what rule is adopted for measuring damages, provided the jury can and does thereunder work out substantially just compensation.

**DAMAGES:** Double Recovery. Allowing damages to land which has, in a sense, been permanently injured by reason of an unlawful flooding, and allowing damages to growing crops and damages by reason of inability to raise crops on the same land, and by reason of the same flooding, do not constitute or authorize a double recovery.

**WORDS AND PHRASES:** "Value of Use"—"Rental Value." "Value of use" of lands, and "rental value" of lands, are synonymous terms.

**DAMAGES:** Injury to Leasehold Interest. On the issue as to the damages to a leasehold interest in farm lands by reason of the unlawful flooding of the land, evidence is admissible of the usual crop yield and the value thereof in the neighborhood in question.

*Appeal from Pocahontas District Court.*—D. F. COYLE, Judge.

MAY 20, 1918.

ACTION to recover damages for overflow. Trial to a

jury. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*T. F. Lynch* and *Hughes, Sutherland & Taylor,* for appellant.

*Kenyon, Kelleher, Price & Hanson,* for appellee.

PRESTON, C. J.—The petition was filed in September, 1914, and is to recover damages for flooding plaintiff's land, and injury done to the crop thereon in the year 1913. Referring only to the issues which seem to be
1. LANDLORD AND TENANT: action by landlord for damage to his share of rent. controlling, it is alleged, substantially, that, prior to the year 1912, a drainage district was established, and tile crossing plaintiff's land crossed defendant's right of way; that
the tile at that point was 22 inches in diameter; that plaintiff, in rebuilding a bridge at said point, obstructed said ditch and drain by driving through said tile line four large piling, each 14 inches in diameter, thereby obstructing the same and reducing its efficiency and capacity to carry off water from surrounding land, including plaintiff's; that the water was dammed up on plaintiff's land, drowning out the crops during the season of 1913; that, in addition thereto, the flooding caused an accumulation of foul weeds, caused the land to become sour, and resulted in permanent injury to the land; that for said season plaintiff had rented the land to one Johnson for a share of the crop, two fifths of such crop to go to plaintiff and three fifths to the tenant, Johnson. The lease provided, among other things, that the tenant was to pay and deliver to plaintiff, as rent, the two-fifths part of all the crops; that the small grain was to be threshed before November 1st, and the tenant had no right to remove any of the share of the crops belonging to plaintiff from the premises until the division was made. The first count of the petition asks damages for injury to plaintiff's land and its share of the crop. The second count

makes similar allegations as to the flooding of the land, and alleges further, and the proof shows, an assignment to plaintiff by Johnson of his claim for damages against the company for the tenant's three-fifths share,—that the tenant was in possession of the lands for the year 1913. Plaintiff asked $3,000 damages on both counts of the petition. The jury allowed $1,750.

By an amendment to the petition, the plaintiff says, as to the first count, that 50 acres of corn ground were unplanted because of the wrongful acts of the defendant, and that about 55 acres which were planted were seriously damaged, resulting in loss to plaintiff on this account of $1,200; that plaintiff's oats crop was damaged $148; and as to the second count, it is alleged that the loss and injury to corn crop were $1,350, and loss and damage to the oats crop, $222.

The answer is in denial, and it says, further, as to each count of the petition, that plaintiff knew the situation, and knew of the break in the tile at the time it occurred; and that, by the expenditure of a nominal amount, it could have prevented the injury, and for that reason it is not entitled to recover; and further, that, if plaintiff's premises were flooded at all, it was not due to the breaking of any tile, but to the insufficient drainage system, as constructed by the drainage district.

It is stated by appellant in argument that the principal errors relied upon for a reversal have reference to the admission of testimony, and instructions to the jury. A considerable part of the argument by counsel for both sides is in regard to the question as to whether plaintiff can recover on the first count, as the owner of the land, for injury to its two-fifths share of the crop. At the close of all the testimony, defendant moved the court to withdraw from the consideration of the jury any right of the plaintiff to recover under the first count for alleged loss to crops or

damage to crops, because, under the issues and evidence, it is shown that such were not the property of the plaintiff, but, if the property of anyone, the property of the tenant, Johnson. The question was not otherwise raised in the trial court. The facts in connection with the different propositions will be stated briefly.

1. As to whether plaintiff can recover for its two-fifths share. Appellant concedes, in its reply argument, that this question may involve only a technical rule of pleading, but that they are entitled to have the rule observed. It is conceded by appellant that, under the statute, an action must be maintained by the real party in interest; but it contends that the owner of the land was not the real party in interest, as regards the crops that were growing upon the premises, and that the tenant was the only person entitled to sue on account of their injury or destruction. Appellee concedes, as we understand it, that this is the rule in some cases, but insists that, where the crop is to be raised by the tenant on shares, the rule does not apply, and that this is especially so since the suit was not brought until after the tenant's lease had expired, and the tenant has assigned to the landowner the damages to his share of the crop; and they say that, under such circumstances, the tenant could have no interest in the two-fifths share that would go to the landowner. It may be possible that it could be worked out by the tenant's suing as trustee for the owner of the land as to the landlord's share; but it seems to us that this would be an awkward way to go at it, and that such circumlocution is wholly unnecessary, as applied to the facts in this case. Appellant cites, on this point, *Drake v. Chicago, R. I. & P. R. Co.*, 70 Iowa 59; *Townsend & Knapp v. Isenberger*, 45 Iowa 670; *Rees v. Baker*, 4 G. Greene 461; *Blake v. Coats*, 3 G. Greene 548; *Alwood v. Ruckman*, 21 Ill. 200; *Baltimore & O. S. W. R. Co. v. Stewart*, 128 Ill. App. 271, 274.

Appellee cites at this point, in support of its contention that plaintiff is the real party in interest and entitled to prosecute the action under a share rent lease, *Riddle v. Dow*, 98 Iowa 7; *Blunck v. Chicago & N. W. R. Co.*, 142 Iowa 146; *Niagara Oil Co. v. Ogle*, 177 Ind. 292 (98 N. E. 60); *Gulf, C. & S. F. R. Co. v. Caldwell*, (Tex. Civ. App.) 102 S. W. 461; *Fuhrman v. Interior Warehouse Co.*, 64 Wash. 159 (116 Pac. 666); *Doke v. Trinity & B. V. R. Co.*, 60 Tex. Civ. App. 106 (126 S. W. 1195); 24 Cyc. 1468.

We shall not attempt a review of all these cases, but content ourselves by referring to some of them, and our conclusion that appellee's cases, under the facts of the instant case, are controlling.

It is true, as contended by appellant, that, in the *Drake* case, supra, it was said that a landlord has no such interest in the growing crops of his tenant as to enable him to maintain an action against a person who injures the crop, and in the *Townsend v. Isenberger* case, supra, it was said that the share of the crops reserved by the lease to the landowner is to be regarded as rent. But these cases are distinguished in some of our later cases. It should be borne in mind, we think, that, in the instant case, there is no question of the right of possession of the crops grown on the leased premises, such as might arise in a controversy between the landlord and tenant. Under such a lease, there is no liability on the tenant's part to the landlord for the share which the landlord would have received had the defendant not flooded the land; the tenant has not agreed to pay the rent in money, nor is he obligated or bound to deliver any grain or other crops which he was prevented from growing by the alleged wrong of the defendant. The cases are referred to in *Riddle v. Dow*, supra, where it is said:

"It is undoubtedly true that the authorities generally hold that, where a tenant on shares has exclusive possession of the leased premises, the legal title to the entire crop

grown thereon and the right to possess it are vested in him until the share which is to be delivered as rent is separated from the remainder of the crop; and some authorities hold that such ownership is exclusive. It will be found, however, that, in most cases of that character, the landlord, or person claiming through him, was endeavoring to assert a right of possession as against the tenant before a division of crops had been made, or that there had been a conveyance of the land before a maturity of the crops, and a claim made that the landlord's share did not pass by the conveyance. But the rules which control in such cases are not applicable to this case."

The *Riddle* case was a garnishment case, where it was held that a mortgage by a lessor upon his share-rent interest in the crop was paramount to a garnishment of the tenant. In that case, in speaking of the *Townsend v. Isenberger* case, the court said that what was said in regard to the ownership of the tenant was designed to show that the rent had not accrued, and was not payable until after the purchaser at the sheriff's sale had acquired title to the land; hence that the case was controlled by the rules that rent reserved by lease, not accrued, passes by a conveyance of the land, and that a purchaser under execution sale is entitled to the rent accrued or falling due after the execution of the sheriff's deed. And, in referring to *Drake v. Chicago, R. I. & P. R. Co.*, supra, it was said:

"But the nature of the landlord's claim to the crops in that case is not shown. The point was decided without discussion by the court, apparently on the authority of *Townsend v. Isenberger.* The case cannot, therefore, be regarded as in conflict with the views we now express."

It was further said, in the *Riddle* case, after reviewing the authorities:

"But it was not said that the interest of the landlord in the crops raised, was no more than it would have been

had the rent been payable in money.  In no case which has
been called to our attention has a share of the crop to be
delivered as rent been treated, in all respects, as though it
were money rent.  That it should not be, is clear, on prin-
ciple.  When rent is to be paid in money, the obligation
of the tenant is discharged by the payment of the speci-
fied amount of money, from whatever source obtained; and,
if a share of the crop to be grown, or its equivalent, is to
be paid as rent, the requirements of the lease will be sat-
isfied by the delivery of the share itself, or by delivering
an equivalent—as crops of a kind and quality equal to the
share designated.  But when the rent is to be paid by de-
livery of a share of the crop raised on the leased premises,
and no option is given to deliver an equivalent, the obli-
gation of the tenant can be satisfied only by a delivery of
the specified share of the crops grown on the leased prem-
ises.  Nor can he be compelled to pay anything but the
stipulated share, unless he fails to deliver it according to
the terms of his contract.   *   *   *   It was intimated, how-
ever, in *Parker v. Garrison*, 61 Ill. 250, that the delivery of
a share of grain reserved as rent might be enforced as the
execution of a trust.  In that case, the tenant had agreed
to deliver as rent, one half of the crops which he should
raise on the leased premises; but it was to be paid in corn.
He refused to deliver the stipulated share, and did not sep-
arate it from the remainder of the crop, but intended to
sell all of it.  He was enjoined from selling or otherwise
disposing of the grain at the suit of the landlord.  The
court said that the landlord had an interest in the corn;
that 'it justly and equitably belongs to him;' that 'the de-
fendant, Garrison, had received from him the entire con-
sideration of it,   *   *   *   and it was his plain duty to
deliver the corn to the complainant.'  That case is an au-
thority for the theory that the landlord has an interest in
the crop which he is to have a share of as rent, before a di-

vision is made, which is more than a mere right to a land-lord's lien, and which the courts will protect. It should be remembered, in this connection, that the rule that the legal title to crops, a share of which is to be delivered as rent, and the right to their exclusive possession, are in the tenant until a separation and delivery of the rent share, is fully recognized by the Supreme Court of Illinois [citing cases]."

In the case of *Niagara Oil Co. v. Ogle,* supra, the Supreme Court of Indiana held that:

"While growing, both landlord and tenant had an interest in the crops, and both would be entitled to damages for their injury or destruction, * * * whether, at the time this suit was commenced, the landlord and tenant owned the crops as tenants in common, or whether they were in possession of the tenant under contract for the delivery of one half thereof, in the bushel or by weight, to the land-owner for rent, when harvested, or whether they had been, when the action was commenced, divided in equal shares between landlord and tenant, would not affect the landlord's right to an action for damages for injury by a third person to the same. No right of possession of crops is here involved. The relief prayed is for damages for injury to a specific property, and such relief will not be denied simply because a third party may be in the rightful temporary possession thereof. No question is raised here concerning a defect of parties plaintiff; and certainly, in the absence of such objection, the landlord, though the owner of the undivided half only of the crops, may, alone, maintain an action for such damages as he may have sustained by the injury [citing cases]."

The other cases cited sustain the proposition. The case of *Doke v. Trinity R. Co.,* supra, was a case to recover damages for injury to crops from an overflow of the land. We shall not further discuss them. In this case the lease had

expired; the tenant had assigned his interest or share to plaintiff; he might not be disposed to employ counsel and incur expense to sue for his landlord.

In *Minneapolis Iron Store Co. v. Branum,* (N. D.) 162 N. W. 543, at 552, it was held, citing numerous cases, that, under a lease similar to that in the instant case, the owner of the land and the tenant are tenants in common of the crops. See, also, *Doke v. Trinity R. Co.,* supra, where it was said that this is in accord with the great weight of authority.

We are of opinion that the court did not err in overruling the defendant's motion to direct a verdict as to this first count.

2. As to the questions of fact whether the piling driven by defendant obstructed the flow of water, and the condition of the crop and land when the injury occurred, these and other questions were questions for the jury, and have sufficient support in the testimony. We shall not set out the evidence.

3. As to defendant's claim that plaintiff could have, by the expenditure of a nominal amount, prevented injury, it is to be said that the court withdrew that issue from the jury upon its own motion, and stated as reasons therefor:

2. DAMAGES: avoidable damages: non-necessity to commit trespass.

"That the burden of proof is upon defendant, and there is no evidence to show that the plaintiff had any right to remove the posts [piling] which constituted the obstruction, or any right to change the course of the drain across which the posts or piling were placed, the drain being a large drain and under the control of public authorities; and for the further reason that there is no evidence to show that the obstruction was discovered in time to avoid all the damage, but on the contrary, the evidence shows that the water had accumulated

and a part of the damage had occurred before the obstruction was discovered."

We think the court was right about this. Appellant seems to rely on 4 Sutherland on Damages (3d Ed.), 3079, to the effect that, if plaintiff has access to the nuisance, or the means or opportunity of avoiding or mitigating the injury it causes, it is his duty to abate it, or to take proper steps to lessen the damage; but the same authority holds that the fact that plaintiff might have abated the nuisance caused by obstructing the ditch, but did not, it being necessary to go upon defendant's land for that purpose, will not affect his right of action or the damages.

As to the other defense, that the drainage system was insufficient, this seems not to be seriously relied upon by appellant in argument. At any rate, the jury was told that there could be no recovery unless there was a finding that defendant had obstructed the flow of water, and the jury was limited, in the allowance of damages, to such as were occasioned by the acts of the defendant.

4. The next point argued is in regard to the instructions as to measure of damages, and the admission of evidence in reference thereto. Under the evidence, the jury could have found that the obstruction was placed in the tiling early in April, 1913. The tenant sowed his oats, about 25 acres, about April 8th. At that time, the water drained off the land, and there was no standing water. The heavy rainfall was about May 12th. Prior thereto, the tenant had plowed about 60 acres of land, and about 25 acres had been plowed the previous autumn. The ground, prior to the rain, was dry enough for plowing. Sixty acres had been planted to corn: if there had been no obstruction and no flooding, 50 acres more of land could and would have been plowed and planted to corn. The 60 acres which were planted in corn were finished June 10, 1913. But for the obstruction, it

3. DAMAGES: flooding of lands and injury to soil.

could and would have been planted considerably earlier than that. Because of the late planting, the corn did not mature, and half of the 60 acres was so wet that it was rendered unfit for crops. There were 165 acres in the farm, less the amount taken out on account of a public road. There was evidence as to the yield of corn and oats on similar land, and the value thereof. Evidence was introduced as to the reasonable value for the use of the farm before and after the flooding. The jury could have found, also, from the evidence, that the permanent effect of the flooding on the land was that the ground was made sour, foul weeds grew, and that alkali was brought out on the low lands as a result of the flooding. The instructions as to the measure of damages are criticised. The damages claimed in the first count of the petition involve. different elements: that is, damage to the land itself, and the damage to plaintiff's share of the crop. Appellant contends, first, that Instruction No. 5, relating to the first count, is erroneous, in that it allowed damages on the basis of the whole farm, when it should have confined plaintiff to its recovery for the area actually flooded; and cites *Thompson v. Illinois Cent. R. Co.*, (Iowa) 153 N. W. 174 (not officially reported). But a rehearing was granted in that case, and the second opinion is found in 177 Iowa 328, where, at page 332, the rule is given which conforms to the fifth instruction, the first part of which, relating to the permanent damage, reads substantially thus: That, if the jury should find plaintiff entitled to damage because the water made the land sour, etc., they should allow as damages therefor the difference between the value of the land immediately before the water accumulated on the land and its value immediately afterwards, excluding any consideration of the crops as an element of value.

The remainder of Instruction 5, as to the other elements of damage, reads substantially this way: That, if the jury should find for plaintiff, and that the act of de-

fendant prevented the tenant from planting **4. Damages: flooding of lands and injury to crops.** corn on some of the land, or damaged any corn or oats planted, the jury should allow, as damages therefor, the difference between the value of the leasehold interest of the tenant—in other words, the difference between the value of the use of the premises for the term of the lease—immediately before the damage occurred, and the value of the same immediately after it occurred, taking into consideration the right of the tenant to grow and mature the crop, and the right of plaintiff to have two fifths of the crop as rent, and allowing plaintiff only two fifths of the said difference, not allowing more for any part or element of the damage than is claimed therefor. Appellant's complaint of this is that the damages for injury to premises before the crops are planted must be recovered on the basis of injury to the land itself,—that is, the difference in the value of the land before and after the injury, where permanent injury is claimed; and in support of this, it cites *Drake v. Chicago, R. I. & P. R. Co.*, 63 Iowa 302; *Jefferis v. Chicago & N. W. R. Co.*, 147 Iowa 124; *Sullens v. Chicago, R. I. & P. R. Co.*, 74 Iowa 659; *Harvey v. Mason City & Ft. D. R. Co.*, 129 Iowa 465; and some authorities from other jurisdictions. It is per-**5. Damages: flexibility of measures.** haps true that the damage in the instant case could have been worked out in that way; but we have said that the rule for the measure of damages in a given case is often one of difficulty, and that it frequently happens that one of two or three rules would be effective, the purpose of the law being to give compensation. We have seen that the court gave the correct rule as to the permanent damage to the land, and it has been held that the measure of damages to a leasehold is the difference in its value before and after the overflow. *Blunck v. Chicago & N. W. R. Co.*, 142 Iowa 146. In that case it was said that, obviously enough, the rule of rental value must gov-

ern in cases presenting no more than an injury and damage to growing crops. If the thing destroyed, although it is a part of the realty, had a value which could be accurately measured and ascertained without reference to the soil on which it stands, or out of which it grows, the recovery may be the value of the thing thus destroyed. This was the rule given in the instruction. It is true that a part of the land was not put in at all, and we think it is not a case where it was necessary to show the cost of planting, working, and harvesting the crop. The rule given by the instruction authorized the recovery for the difference between the value of the leasehold interest immediately before the damage occurred and the value of the same immediately after it occurred. It is thought by appellant that the instruction allowed a double recovery: first, to recover for damage to the land itself, and

6. DAMAGES: double recovery.

second, a recovery for the use of the land. But we think the instruction is not susceptible of such a construction. As to the permanent damage, the instruction limited the recovery to the damage to the land itself, exclusive of the crop. As said, there were several different elements of damage in the first count, and we think the instruction given permitted the jury to work out justice to the parties, and without prejudice to the defendant.

Another complaint is made of the wording of the instruction, in that it uses the words, "the value of the use of the premises." Cases are cited from other jurisdictions; but there is little, if any, difference in the expression, "value of the use" and "rental value." We have so held.

7. WORDS AND PHRASES: "value of use;" "rental value."

*Alexander v. Bishop*, 59 Iowa 572, 579; *Leick v. Tritz*, 94 Iowa 322.

Evidence of the usual crop yield and its value is proper and admissible, even though the rule for determination of measure of damages is confined, as it was here, to the value

of the leasehold. *Jefferis v. Chicago & N.*
8. DAMAGES:
injury to lease-  *W. R. Co.*, 147 Iowa 124; *Nelson v. Omaha*
hold interest.  *& C. B. St. R. Co.*, 158 Iowa 81; *Black v.*
*Minneapolis & St. L. R. Co.*, 122 Iowa 32.

5. The seventh instruction, as to the measure of damages, has reference to the second count. It is conceded that the same rule was adopted by the court as was applied to one of the elements of damage in the first count. So that what we have said as to that disposes of the seventh instruction.

6. Finally, it is thought by appellant that the damages allowed are excessive. Defendant introduced no evidence to rebut appellee's evidence at this point. The argument is that the court will take judicial notice of the fact that farm land in Iowa, such as that flooded, would not rent, under favorable conditions, for $10 an acre,—that is, that the rental value or value of the use would not exceed that amount,—and that the verdict is more than that for the entire farm. But, under the evidence and instructions, something could have been allowed for injury which was more or less permanent, in addition to the rental value. The estimates of some of the witnesses were that the damages were more than the amount of the verdict. We are not prepared to say that the verdict has not sufficient support in the testimony.

Our conclusion is that no prejudicial error appears, and the judgment is, therefore,—*Affirmed*.

WEAVER, EVANS, and GAYNOR, JJ., concur.